IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| KEVIN NEIL HARTMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:05-cv-645-F |
| ) | |
| GENEVA COUNTY JAIL, et al., ) | |
| ) | |
| Defendants. ) | |

## DEFENDANTS' SPECIAL REPORT

COME NOW Greg Ward, Sheriff of Geneva County, Alabama, Donald Weeks, and Marilyn Ruppel, Defendants in the above-styled cause, and submit their Special Report to the Court.

## INTRODUCTION

Plaintiff Kevin Neil Hartman filed his Complaint against the Geneva County Jail, Greg Ward, Donald Weeks, and Marilyn Ruppel on July 13, 2005. (Plaintiff's Complaint, p. 2.)  On July 19, 2005, the Magistrate Judge entered a Report and Recommendation that the Geneva County Jail be dismissed pursuant to the provisions of 28 U.S.C. 1915(e)(2)(B)(i). (Report and Recommendations dated July 19, 2005.)  That same date Defendants Greg Ward, Donald Weeks, and Marilyn Ruppel were Ordered to File a Special Report within forty days of the date of the Order. (Order to File Special Report dated July 19, 2005.)  On August 10, 2005, the District Judge adopted the Report and Recommendation of the Magistrate Judge and dismissed Plaintiff's claims against the Geneva County Jail. (Order dated August 10, 2005.)  On September 20, 2005, the Defendants' Second Motion for Motion for Extension of Time to file their Answer and

Special Report was granted, making Defendants' Special Report due on October 17, 2005. (Order dated September 20, 2005.)

Plaintiff Kevin Neil Hartman was booked into the Geneva County Jail on June 18, 2005, after being arrested on charges of possession of a controlled substance and unlawful manufacturing of a controlled substance. (Exhibit A, Inmate File of Kevin Neil Hartman, "Inmate File," Booking Sheet dated June 18, 2005; Exhibit B, Inmate File, Inmate Jail Property Issue and Receipt Form; Exhibit C, Inmate File, Prisoner Activity Sheet.) Plaintiff is currently a pre-trial detainee at the Geneva County Jail.

## PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that he was given medication for a headache that made him sick and that he was denied medical treatment. (Plaintiff's Complaint pp. 2-3.) Plaintiff seeks $30,000.00, payment of court costs, attorney's fees, and reasonable expenses. (Plaintiff's Complaint p. 4.) Plaintiff also requests the Court order the Geneva County Jail to hire a registered nurse to be on duty twenty-four hours a day, seven days a week. (Plaintiff's Complaint p. 4.) Finally, he requests to have one hour of exercise every day and for the jail to be run by "regulations." (Plaintiff's Complaint p. 4.)

## DEFENDANTS' RESPONSE TO PLAINTIFF'S ALLEGATIONS

Defendants deny the allegations made against them by Plaintiff as being untrue and completely without basis in law or fact. Defendants deny that they acted, or caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled. (Exhibit D, Affidavit of Greg Ward, "Ward aff." ¶ 4; Exhibit E, Affidavit of Donald Weeks "Weeks aff." ¶ 4; Exhibit F, Affidavit of Marilyn Ruppel, "Ruppel aff." ¶ 4.) Defendants raise the defenses of Eleventh Amendment immunity, qualified immunity, Plaintiff's failure to meet the requirements

of the Prison Litigation Reform Act and additional defenses presented below. Defendants reserve the right to add additional defenses if any further pleading is required or allowed by the Court.

I.   FACTS

   A.   Medical Policy and Procedure

The Geneva County Sheriff's Department operates the Geneva County Jail pursuant to sound policies and procedures which ensure that the rights of all inmates incarcerated therein are respected. Members of the jail staff are trained both in house and at certified training programs and academies regarding all aspects of their jobs, including the administration of medical care to inmates. (Ward aff. ¶ 5; Exhibit G, Affidavit of Geneva County Jail Administrator Carl Rowe, "Rowe aff. ¶ 4).

It is the policy of the Geneva County Sheriff's Department that all inmates confined in the Geneva County Jail be entitled to a level of health care comparable to that available to the citizens in the surrounding community in order that the inmates' physical and emotional well-being may be maintained. All medical care rendered to inmates in the Geneva County Jail is delivered under the direction of a licensed health care practitioner. It is departmental policy that no member of the jail staff, or any other Sheriff's Department employee, may ever summarily or arbitrarily deny an inmate's reasonable request for medical services. All judgments regarding the necessity of medical treatment are left to a licensed health care practitioner. (Ward aff. ¶ 6; Rowe aff. ¶ 5).

It is the policy of the Geneva County Sheriff's Department that all inmates incarcerated in the Geneva County Jail be allowed to request health care services at any time. Requests of an emergency nature may be made either verbally or in writing, but all requests for non-emergency

care from state or county inmates must be submitted in writing. Members of the jail staff are charged with the responsibility of accepting requests for medical treatment from inmates and taking appropriate action to see that those requests are dealt with in a prompt and appropriate manner. Inmates with non-emergency medical problems are taken to see Dr. O.D. Mitchum in Geneva, Alabama. Inmates who have an emergency medical problem are taken to the Emergency Room for treatment. (Ward aff., ¶ 7; Rowe aff., ¶ 6.)

When a member of the jail staff receives a request for medical treatment from an inmate, it is his or her responsibility to turn that request form over to the responsibility of the on duty jailer or matron. It is then the on duty jailer or matron's responsibility to make an appointment for the inmate with an appropriate health care provider. Any doubt as to whether an actual need exists for medical treatment is resolved in favor of the inmate, with medical services being offered. All requests of an emergency nature are handled immediately. (Ward aff., ¶ 8; Rowe aff., ¶ 7).

It is the policy of the Geneva County Sheriff's Department that persons incarcerated in the Geneva County Jail be entitled to safe and accurate dispensation and administration of prescription and nonprescription medication. All medication prescribed for an inmate by a health care provider during the time of an inmate's incarceration is obtained by the Sheriff's Department and distributed according to the doctor's directions. (Ward aff., ¶ 9; Rowe aff., ¶ 8.)

The Jailers at the Geneva County Jail have access to over the counter medication such as Tylenol, Ibuprofen, and Pepto-Bismol obtained from Geilstrap Drugs to distribute as needed to inmates. (Ward aff., ¶ 10; Rowe aff., ¶9; Ruppel aff., ¶ 5.)

**B.     Facts Regarding the Incident Alleged in Plaintiff's Complaint**

On June 28, 2005, Plaintiff complained that his head hurt.  (Rowe aff., ¶ 11; Weeks aff., ¶ 6.)  Therefore, Marilyn Ruppel gave him Tylenol or Ibuprofen in accordance with the policy and procedures of the Geneva County Jail.  (Rowe aff., ¶¶ 9 and 11; Weeks aff., ¶ 6.)  The next day, the Plaintiff complained to Donald Weeks that his stomach hurt.  (Rowe aff., ¶ 12; Weeks aff., ¶ 7.)  Therefore, Donald Weeks gave the Plaintiff Pepto-Bismol.  (Rowe aff., ¶ 12 ; Weeks aff., ¶ 7.)  The Plaintiff did not complain that he was sick any more after that incident.  (Rowe aff., ¶ 12; Weeks aff., ¶ 7.)  Days later he made two requests to go to the doctor so that he could find out why he had gotten sick previously, even though he was no longer ill.  (Exhibit H, Inmate File, Inmate Request Form dated July 3, 2005; Exhibit I, Inmate File, Inmate Request Form dated July 4, 2005.)  Within two weeks later the Plaintiff requested to see someone from Spectracare for an appointment that was made prior to him being incarcerated.  (Exhibit J, Inmate File, Inmate Request Form dated July 13, 2005.)  The next day, a jail staff member contacted Spectracare in two different locations and found no record of an appointment being made since March of 2005 and no record of a missed appointment.  (Exhibit J, Exhibit C.)

During this time period Plaintiff was undergoing withdrawals from methamphetamine.  (Rowe aff., ¶ 13; Weeks aff., ¶ 8; Ruppell aff., ¶ 6.)  If the Plaintiff had been in need of medical care or treatment, he would have received treatment in accordance with the policy and procedures of the Geneva County Jail.  (Rowe aff., ¶ 14; Weeks aff., ¶ 9; Ruppell aff., ¶ 7.)

Plaintiff has not filed a grievance in regards to the allegations made the basis of his Complaint.  (Rowe aff., ¶ 15.)[1]

---

[1] The remainder of Plaintiff's Inmate File and Inmate Medical File not previously identified as separate exhibits is attached hereto as Exhibit K.

**II.     LAW**

    **A.     All claims by Plaintiff against Defendants in their official capacity must fail based on Eleventh Amendment immunity and because they are not "persons" under 42 U.S.C.A. § 1983.**

Plaintiff's claims against Defendants in their official capacities are due to be dismissed for lack of subject matter jurisdiction; as such claims are barred by the Eleventh Amendment to the United States Constitution. Parker v. Williams, 862 F.2d 1471, 1476 (11th Cir. 1989) (holding a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Carr v. City of Florence, Ala., 918 F.2d 1521, 1525 (11th Cir. 1990) (holding a deputy sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Lancaster v. Monroe County, 116 F.3d 1419, 1430-31 (11th Cir. 1997) (extending Eleventh Amendment immunity to include jailers employed by county sheriffs).

In addition, the official capacity claim must fail because 42 U.S.C.A. § 1983 prohibits a person, acting under color of law, from depriving another of his rights secured by the United States Constitution. 42 U.S.C.A. § 1983 (emphasis added). The United States Supreme Court has held that state officials, in their official capacities, are not "persons" under § 1983. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989). Any claim against Defendants in their official capacities should therefore be dismissed because they are not "persons" under § 1983 and therefore claims against them in their official capacity fail to state a claim upon which relief can be granted. Id.; Carr v. City of Florence, Ala., 916 F.2d 1521, 1525 n.3 (11th Cir. 1990).

**B. Plaintiff's failure to comply with the Prison Litigation Reform Act bars the Complaint.**

**1. Plaintiff has failed to exhaust all Administrative Remedies.**

Under the Prison Litigation Reform Act ("PLRA"), an inmate is required to exhaust all administrative remedies before instituting an action under 42 U.S.C. § 1983. 42 U.S.C. § 1997e(a). The Plaintiff in this case has not utilized two separate and distinct administrative remedies available to him. First, the Plaintiff has not exhausted the grievance procedures provided at the Geneva County Jail. Secondly, he has not alleged that he pursued any grievance through the State Board of Adjustment. See Brown v. Tombs, 139 F.3d 1102, 1103-04 (6th Cir. 1998) (requiring prisoners to affirmatively show that they have exhausted administrative remedies). Plaintiff has not filed a grievance in regards to the allegations made the basis of his Complaint.

In addition to the grievance procedure at the local level, Alabama law provides the opportunity to file a claim and proceed before the State of Alabama Board of Adjustment pursuant to Ala. Code § 41-9-60. The Sheriff of Geneva County, as are his alter egos, is a state officer and therefore would be entitled to sovereign immunity. See Lancaster v. Monroe County, 116 F.3d 1419, 1429 (11th Cir. 1998). Due to this immunity, the State of Alabama has provided an administrative remedy for the recovery of money damages through the State of Alabama Board of Adjustment.

As a result of Plaintiff's failure to exhaust these two remedies, he is barred from bringing this action under § 1997e(a). See Alexander v. Hawk, 159 F.3d 1321, 1326-27 (11th Cir. 1998) (affirming dismissal of prison action due to failure to exhaust administrative remedies).

> **2.    Plaintiff's claims are barred by the Prison Litigation Reform Act because he has not suffered any physical injury as a result of the allegations in his Complaint.**

"No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury. . . .  In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than de minimis."  Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309 (11th Cir. 2002).  There is no record that Plaintiff suffered any physical injury that is greater than de minimus as a result of any alleged constitutional violation.  Because Plaintiff has not made a showing of physical injury that is greater than de minimis, his complaint is due to be dismissed.

> **C.    Alternatively, Defendants are entitled to summary judgment based on qualified immunity because nothing in their conduct crossed a "bright line" contour of clearly established constitutional law.**

Public officials, like Defendants here, are protected in their individual capacity by qualified immunity as long as "a reasonable officer could have believed [his actions] to be lawful, in light of *clearly established law* and the information [that the officer] possessed."  Anderson v. Creighton, 483 U.S. 635, 636 (1987) (emphasis added).  The Eleventh Circuit Court of Appeals has observed, "[t]hat qualified immunity protects governmental actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their *individual capacities*."  Lassiter v. Alabama A & M Univ., 28 F.3d 1146 (11th Cir. 1994) (en banc) (emphasis in original) (footnote omitted).

Our circuit has divided consideration of qualified immunity into two "prongs" of analysis as articulated in Zeigler v. Jackson, 716 F.2d 847, 849 (11th Cir. 1983).

> First, "the defendant government official must prove that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'"

8

> Sammons v. Taylor, 967 F.2d 1533, 1539 (11th Cir. 1992) (quoting Zeigler, 716 F.2d at 849). "[T]hen the burden shifts to the plaintiff to demonstrate that the defendant violated clearly established constitutional law." Id. (quoting Zeigler, 716 F.2d at 849).

Jordan v. Doe, 38 F.3d 1559, 1565 (11th Cir. 1994).

Once it is established that the Plaintiff has stated a claim and that the Defendants were acting within their discretionary authority, the Court then considers whether the contours of the constitutional right allegedly violated were "clearly established." In making this assessment, the reviewing court must examine the state of law *at the time the alleged deprivation occurred*. See Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994); Adams v. St. Lucie County Sheriff's Dep't, 962 F.2d 1563, 1578 (11th Cir. 1992) (Edmondson, J., dissenting), rev'd and reasoning of original dissent adopted, 998 F.2d 923 (11th Cir. 1993) (en banc).

Not only must the "clearly established" law pre-date the subject incident, the law must be relatively "fact specific" and "so particularized" that it would have been obvious or "apparent" to the defendant that his actions were unlawful. See Rodgers, 39 F.3d at 311; Hansen v. Soldenwagner, 19 F.3d 573, 575 (11th Cir. 1994) (both reversing denial of qualified immunity). As the Eleventh Circuit has explained, "[a] plaintiff cannot rely on . . . 'broad legal truisms' to show that a right is clearly established. . . . '[i]f case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant.'" Kelly v. Curtis, 21 F.3d 1544, 1550 (11th Cir. 1994) (reversing denial of qualified immunity as to some defendants) (quoting Post v. City of Fort Lauderdale, 7 F.3d 1552, 1557 (11th Cir. 1992)). While the facts of prior cases establishing the law in a particular context need not be identical, they must be at least "materially similar." Adams, 862 F.2d at 1575 (Edmondson, J., dissenting) (approved en banc, 998 F.2d 923). This case law must "dictate, that is, truly compel (not just suggest or allow or raise a question

9

about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." Id. at 1150.

The evidence clearly shows that Defendants have not committed a constitutional violation, and even assuming a constitutional violation, Defendants have done nothing to cross any bright line of clearly established constitutional law.  Therefore, they are entitled to qualified immunity.

In order to prevail under 42 U.S.C. § 1983 on his medical claim, Plaintiff must demonstrate that Defendants were deliberately indifferent to a serious medical condition.  Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious." Hudson v. McMillian, 503 U.S. 1, 9 (1992).

> A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.  A prison or medical official may be held liable under the Eighth Amendment for actions with "deliberate indifference" to inmate health or safety only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.  Mere negligence does not suffice to prove deliberate indifference.

Farmer v. Brennan, 511 U.S. 825, 837 (1994) ("Deliberate indifference describes a state of mind more blameworthy than negligence."). The Eleventh Circuit, applying Wilson's directives, has distilled the deliberate indifference aspect of this analysis into three separate requirements which a plaintiff must prove: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence."[2] McElligott v. Foley, 182 F.3d 1248,

---

[2] The Supreme Court has emphasized that the level of culpability sufficient to create liability in this context must be significantly greater than "mere negligence" and described it as equivalent to criminal recklessness.  See Farmer v. Brennan, 511 U.S. 825, 839-40 (1994) ("That said, subjective recklessness as used in the criminal law is a familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause as interpreted in our cases, and we adopt it as the test for `deliberate indifference' under the Eighth Amendment.")

1255 (11th Cir. 1999). Consequently, Plaintiff must establish that he had a serious medical need, that each Defendant was aware of the serious medical need and each Defendant disregarded the risk with a state of mind equal to criminal recklessness. Because the Plaintiff in the instant case cannot produce evidence of subjective awareness of an "excessive risk of harm," disregard of that risk, and evidence of criminal recklessness for each Defendants, Plaintiff cannot overcome summary judgment.

The evidence shows that the problems of which Plaintiff complains do not rise to the level of a serious medical need. Plaintiff complained of a headache and upset stomach both within a period of two days. After those minor problems, Plaintiff did not complain further. Clearly, Plaintiff did no suffer from any objectively serious medical need. Even so, the Defendants were not *deliberately indifferent* to Plaintiff's medically insignificant needs. Plaintiff was offered over-the-counter medications for his minor problems at the expense of the Jail. After Plaintiff was well, the jail staff was under no obligation to take him to the doctor to find out why he had had an upset stomach. Even if there was such an obligation, their actions - not taking an inmate to the doctor where the inmate had had an upset stomach but got better after being given Pepto-Bismol – clearly do not rise to the level of deliberate indifference. Further, the Jail staff acted promptly in finding out whether Plaintiff had missed an appointment at Spectracare. Therefore, Plaintiff cannot show that he was denied appropriate medical treatment in this instance, and thus Plaintiff has not shown a violation of his constitutional rights.

Finally, even if the actions of the Defendants rose to the level of a constitutional violation, there is no clearly established law which would give the Defendants fair warning that their actions - giving an inmate Tylenol or Ibuprofen for a headache and Pepto-Bismol for an upset stomach, and acting promptly in finding out whether Plaintiff had missed an appointment

at Spectracare - is a violation of that inmate's constitutional rights. Therefore, the Defendants in this case are entitled to qualified immunity.

> **D     Plaintiff has failed to allege personal involvement as required by 42 U.S.C. §1983.**

The language of 42 U.S.C. § 1983 requires proof of an affirmative causal connection between the actions taken by the defendants and the constitutional deprivation. <u>Swint v. City of Wadley</u>, 51 F. 3d 988 (11th Cir. 1995). The requisite causal connection may be shown by the personal participation of the defendant, a policy established by the defendant resulting in indifference to constitutional rights or a breach of a duty imposed state of local law which results in constitutional injury. <u>Zatler v. Wainwright</u>, 802 F. 2d 397 (11th Cir. 1986).

The Plaintiff has failed to allege that Sheriff Ward was in any way personally involved in the alleged violation of Plaintiff's constitutional rights. Plaintiff has offered no allegation demonstrating that this named Defendant was in any way involved in the actions he claims were constitutionally infirm. There are absolutely no facts – in fact, the Complaint is completely devoid of any claim against Sheriff Ward-- to show that this Defendant personally participated in the claims made the basis of the Plaintiff's Complaint, nor does the Plaintiff allege specifically how this Defendant violated his constitutional rights. As such, Plaintiff's claims are due to be dismissed against this Defendant.

To the extent that Plaintiff's claim against Sheriff Ward is an attempt to hold him liable under a *respondeat superior* theory, his claim must similarly fail.

> [Supervisory] liability under § 1983 must be based on something more than a theory of *respondeat superior*. Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions and the supervising official and the alleged constitutional violation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged depravation, and he fails to do so.

Dolihite v. Maughon, 74 F.3d 1027, 1052 (11th Cir. 1996).  There are no facts that show a causal connection between any alleged wrongdoing on the part of Sheriff Ward and the alleged constitutional violation.  Therefore, Plaintiff's claims against Defendant Ward are due to be dismissed.

### E.    Summary Judgment Standard

On a motion for summary judgment, the court should view the evidence in the light most favorable to the nonmovant.  Greason, 891 F.2d 829, 831 (11th Cir. 1990).  However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit.  See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000).  "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'"  Reeves, 530 U.S. at 151, quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p. 299.[3]  "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'"  Marsh v. Butler County, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc) quoting Massachusetts School of Law v. American Bar, 142 F.3d 26, 40 (1st Cir. 1998).

---

[3] Although Reeves was a review of a motion for judgment as a matter of law after the underlying matter had been tried, the Supreme Court, in determining the proper standard of review relied heavily on the standard for summary judgment stating, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'"  Reeves, 530 U.S. at 150, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-251 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

## CONCLUSION

Defendants deny each and every allegation made by Plaintiff Kevin Neil Hartman in the Complaint. Defendants have not acted in a manner so as to deprive Plaintiff of any right to which he is entitled.

## MOTION FOR SUMMARY JUDGMENT

Defendants respectfully request that this Honorable Court treat their Special Report as a Motion for Summary Judgment, and grant unto them the same.

Respectfully submitted this 17th day of October, 2005.

                                          **s/C. Richard Hill, Jr.**
                                          C. RICHARD HILL, JR. Bar No. HIL045
                                          Attorney for Defendants

                                          WEBB & ELEY, P.C.
                                          7475 Halcyon Pointe Drive
                                          Post Office Box 240909
                                          Montgomery, Alabama 36124
                                          Telephone: (334) 262-1850
                                          Fax: (334) 262-1889
                                          E-mail: rhill@webbeley.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 17th day of October, 2005, I have served the foregoing document on the following:

                                    Kevin Neil Hartman
                                    Geneva County Jail
                                    P.O. Box 115
                                    Geneva, AL 36340

by placing a true and correct copy of the foregoing in the U.S. Mail, postage prepaid, on this the 17th day of October, 2005.

                                          **s/C. Richard Hill, Jr.**
                                          OF COUNSEL